UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21817-CIV-LENARD/TORRES

PLACE ST. MICHEL, INC., a Florida
corporation d/b/a HOTEL PLACE ST.
MICHEL; NEAL CORPORATION, a Florida
corporation d/b/a RESTAURANT ST.
MICHEL, and BATTLECREEK
PROPERTIES, a Florida partnership,

    Plaintiffs,

vs.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

    Defendant.
_____/

**ORDER ON AMENDED MOTION TO COMPEL PRODUCTION**

This matter is before the Court on Plaintiffs' Amended Motion to Compel Production or to Compel In Camera Inspection [D.E. 44]. The Court has considered the Motion, Defendant's Response, the parties' supplemental memoranda filed in response to the Court's Order of February 16, 2007, as well as the arguments of counsel during the hearing held April 3, 2007. The matter is ripe for disposition.

During the hearing held April 3rd, the Court conducted an in camera inspection of two documents identified in Defendant's privilege log as work product that were challenged by Plaintiffs' pending motion. Upon reviewing the documents and considering the arguments of counsel why the documents should be deemed protected work product, the Court announced its verbal ruling overruling the privilege objections and ordering that the documents be produced to Plaintiffs. The Court initially advised that it would

stay its order for seven calendar days to allow Defendant to consider whether or not to object to the Court's Order, pursuant to S.D. Fla. Local Mag. J. Rule 4(a) and Fed. R. Civ. P. 72.

Upon review of the Court docket, however, the Court overlooked the Order of Reference that governs this case in which the District Judge referred for final disposition all motions concerning discovery matters, as well as other pretrial motions. [D.E. 14]. The parties in this case consented to such Order of Reference on August 8, 2006 [D.E. 8].

Accordingly, the Court's ruling on the pending Motion is final for purposes of this stage of the case. The basis for the Court's stay of production of the documents at issue is thus moot. The Defendant shall, therefore, produce the documents identified as the January 29 and February 2, 2006, adjuster's report to Plaintiffs by April 5, 2007.

## I. BACKGROUND

This matter arises from an insurance coverage dispute between Plaintiffs, the insured, and Defendant Travelers that issued an insurance policy that included coverage for windstorm and hurricane damage. According to the Complaint, Plaintiffs, who own a hotel and restaurant in a historic structure located in Coral Gables, Florida, suffered roof and property damage as a result of Hurricane Wilma that struck South Florida on October 24, 2005. Plaintiffs made a claim under their policy with Defendant for damages sustained as a result of the storm, following which Defendant initiated an investigation of the claim.

Defendant retained the services of an independent insurance adjuster based in Louisiana, who was part of a "CAT" (catastrophe) team assigned to South Florida, to conduct an investigation and examination of the property damage in question. The

insurance adjuster inspected the property, conducted interviews, and reviewed the estimate of damages from a contractor retained by Plaintiffs. That contractor concluded that the damages exceeded $2 million, and he prepared a report dated January 24, 2006, that was submitted to Defendants and the adjuster. The adjuster, however, prepared his own report, dated January 29, 2006, that concluded otherwise.

Shortly thereafter, the insurance adjuster prepared a second report that had more detailed assessments of the work that would be required to repair the damage caused by the storm, which report was dated February 2, 2006. That report, however, was consistent with the earlier January 29th report.

On April 4, 2006, Defendant made a partial payment of Plaintiffs' claims, in an amount that apparently was not sufficient from Plaintiffs' perspective. Plaintiffs filed a lawsuit in state court on June 9, 2006, seeking payment of the remainder of the damages suffered from the storm that Plaintiffs contend is covered under their policy. Defendant removed the case to Federal Court shortly thereafter.

In its initial disclosures, Defendant identified relevant documents in the case, and complied with the Court's local rules by producing a privilege log that identified those documents that it claimed were protected by work product or attorney-client privileges. The January 29th and February 2nd adjuster's reports were included within that log as being "work product" protected. Plaintiffs objected to that designation and filed the pending Amended Motion to Compel seeking to overrule the objections and alternatively obtain in camera inspection of the documents to determine if in fact they were work product and non-discoverable.

## II.  ANALYSIS

### A.  *General Work Product Principles*

Claims of work product "immunity" or "privilege" are governed by the principles set out in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which states in pertinent part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable. . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

It is well settled that these protections only pertain to documents generated based on the anticipated probability that litigation will follow at the time the documents were drafted.  *CSX Transp., Inc., v. Admiral Ins. Co.,* No. 93-132-CIV-J-10, 1995 WL 855421, *2 (M.D. Fla. July 20, 1995).  Materials that were drafted in the ordinary course of business are not protected.  *Id.*  Thus, "in determining whether a document was made in anticipation of litigation, the primary focus is the reason or purpose for creating the document."  *Guidry v. Jen Marine LLC,* No. Civ. A. 03-0018, 2003 WL 22038377, *2 (E.D. La. Aug. 22, 2003); *see also Moye, O'Brien, O'Rourke, Hogan & Pickert v. Nat'l R.R. Passenger Corp.,* No. 6:02-CV-126-ORL-KRS, 2003 WL 21146674, *14 (M.D. Fla. Feb. 4, 2003) ("The testing question for the work-product privilege, . . . is whether, in light of the nature of the document and the factual situation in the particular case, the document

can fairly be said to have been prepared or obtained because of the prospect of litigation.") (internal quotations omitted).

Additionally, the burden is always on the party withholding discovery to show the documents should be afforded immunity. *See Guidry,* 2003 WL 22038377 at *3; *see also Auto Owners Ins. Co. v. Totaltape, Inc.,* 135 F.R.D. 199, 201 (M.D. Fla. 1990). Moreover, "[t]he mere conclusory assertion that material sought is covered by . . . work product privilege is not sufficient to render such material undiscoverable." *Ameritrust Co., N.A. v. White,* Civ. No. 1:90-CV-2691-JEC, 1993 WL 819124, *3 (N.D. Ga. Oct. 20, 1993). Rather, the onus is on the party claiming immunity to provide competent evidence that the materials in question were created in anticipation of litigation. *Auto Owners,* 135 F.R.D. at 201 (finding that plaintiff's argument that the "very nature" of the documents precluded discovery was insufficient); *see also Ameritrust,* 1993 WL 819124 at *3 (conducting an in camera review of the subject documents as a reasonable procedure for resolving work product discovery disputes).

B.  ***Work Product Issues in the Insurance Context***

Under this framework, defining the parameters of work product immunity is a complex exercise in the context of insurance claim files. *See Carver v. Allstate Ins. Co.,* 94 F.R.D. 131, 133-134 (S.D. Ga. 1982); *Guidry,* 2003 WL 22038377 at *3 (citing *Falkner v. General Motors Corp.,* 200 F.R.D. 620, 623 (S.D. Iowa 2001)). On the one hand, Defendant relies on a bright line argument that the Court should find these documents to be per se privileged once it became obvious to Defendant that there was a large discrepancy between Plaintiffs' valuation of the claim (from their contractor's January 24th report) and the valuation of damage that Defendant calculated. Thus, Defendant argues that any investigation or adjuster's reports that followed that January

24th communication constitutes "work product" as it contains the mental impressions and conclusions of the investigator. Defendant also relies greatly upon Florida state cases that clearly apply a more liberal approach to work product protection than Federal cases have traditionally applied.

There is certainly some support for a broad application of work product privilege in the insurance context. *See Weitzman v. Blazing Petals, Inc.,* 151 F.R.D. 125, 126 (D. Col. 1993)) (any time a third party claim is being investigated by a carrier, "the investigation is made in anticipation of claims which, if denied, likely will lead to litigation"); *see also Taylor v. Temple & Cutler,* 192 F.R.D. 552, 558 (E.D. Mich. 1999).

This broader view, however, targets third party claims, that are presumed to be litigation-generating, as contrasted with first party claims like this one. But even this approach to third-party claims is unnecessarily simplistic and stretches the work product doctrine beyond what it was originally intended to be. Indeed, the reliance on a "third party claim" presumption appears to be the minority view in the federal courts. *See S.D. Warren Co. v. Eastern Elec. Corp.,* 201 F.R.D. 280, 283 (D. Me. 2001). It also does not appear to have ever been adopted wholesale either by the Eleventh Circuit or any court in the circuit. The majority view appears to be that a more fact-specific analysis is required. *Id.* at 282-83 (adopting majority view that insurance companies are not accorded special treatment by the work product doctrine and a fact specific approach must be applied).

For instance, the Chief Judge of the Southern District of Georgia in *Carver* concluded that the issue is much more complex and defies a "hard and fast rule" because of the competing policy interests involved. 94 F.R.D. at 134. The answer turns on the particular facts of each case because:

> At some point . . . an insurance company's activity shifts from mere claims evaluation to a strong anticipation of litigation. This is the point where the probability of litigating the claim is substantial and imminent. The point is not fixed, it varies depending on the nature of the claim, and the type of investigation conducted.

Id. (internal citations omitted).

This same approach has been followed by some Florida state courts as well. *See Cotton States Mutual Ins. Co. v. Turtle Reef Assocs., Inc.,* 444 So. 2d 595, 596 (Fla. 4th DCA 1984) ("an insurance company's claims investigation in its early stages is conducted in the ordinary course of business; the object is to determine whether to honor the claim or resist it, and whether to seek subrogation against a third party. . . . [R]eports produced early on by a claims representative are not privileged, whereas subsequent reports of a senior claims representative, assigned when it was established the extent of loss was great and when arson was suspected, were privileged because they were prepared in anticipation of litigation.") (citing *Carver,* 94 F.R.D. at 131).

Factors relevant in the analysis, although not determinative, include who prepared the documents, the nature of the documents, and the time the documents were prepared. *See Kidwiler v. Progressive Paloverde Ins. Co.,* 192 F.R.D. 536, 542 (N.D. W.Va. 2000) (no bright-line test determines when claim investigation is conducted in ordinary course of business and when it becomes in anticipation of litigation). The nature of the litigation, the relationship between the parties, and any other fact peculiar to a given case should also be weighed. *Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Co.,* 123 F.R.D. 198, 202 (M.D.N.C. 1988). Finally, another factor that may make a material difference is the involvement of counsel in the process, either on behalf of the claimant or the insurance company. *See Kidwiler,* 192 F.R.D. at 542; *Pete Rinaldi's,* 123 F.R.D. at 201

("Involvement of an attorney is highly relevant but not necessarily controlling factor.").

### C. *Work Product Protection in This Case*

The Court now turns to how these different factors should be applied in this case. There is no question that counsel for Defendant were not involved in the initial investigation of the damage claim filed here. The initial stages of the investigation were traditional and customary; the company assigned an adjuster to examine the loss and prepare an appraisal of the property damage that would be covered under the policy. The Court's examination of the adjuster's reports in question shows, in fact, that the adjuster was conducting that very type of traditional examination. And the adjuster was clearly not preparing or writing the report in a manner that would suggest that it was prepared only for counsel's eyes or with an eye strictly to litigation defense. The report, to the contrary, reveals an objective assessment of the loss, based upon all the circumstances involved. That is what one would expect from an insurance company's representative at such an early stage of the process.

It is also true that the two reports were prepared shortly after, and partially in response to, the Plaintiffs' contractor's assessment of the damage and the extent of the covered loss. That fact, however, hardly generates "anticipation of litigation" solely because it revealed a point of disagreement. That is, too, a normal process in an insurance coverage assessment. If the fact that an insured's initial evaluation of a claim materially disagreed with the initial examination of the loss by the insurance company's representative gave rise, then, to immediate work product protection because litigation was anticipated, then as a practical matter that would result in a per se application of the protection to almost all insurance claims. That flies in the face of the current state of the law in Federal court. Federal cases require a more specific case by case

assessment, and under that analysis an initial disagreement between an insured and the carrier cannot give rise per se to anticipation of litigation.

The Court concludes that the two reports in question are the product of the ordinary course of the Defendant's business, and are not the product of litigation preparation. Therefore, under the Federal courts' application of its work product protection, these two documents cannot constitute protected work product. Clearly, the Court's in camera examination of the documents only supports that conclusion and reveals, indeed, that no irreparable harm of any kind would befall Defendant if the documents are produced. There is no opinion attorney work product whatsoever that may be found in the reports, and indeed very little opinion work product of any kind. The reports, at best, are fact work product if at all.

In the end, of course, the Court's conclusion is that they are not protectable work product no matter how one views them. The documents are routinely generated documents in the insurance carrier's business. They are thus relevant to this case and not protected from disclosure under Rule 26(b)(3). Therefore, the documents must be produced.

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Amended Motion to Compel Production is **GRANTED**. Defendant's objections to the January 29th and February 2nd reports are OVERRULED. Defendant shall produce the responsive documents to Plaintiffs no later than April 5, 2007.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 4th day of April, 2007.

/s/ Edwin G. Torres
EDWIN G. TORRES
United States Magistrate Judge